# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

SECOND DISTRICT—JUNE TERM, 1880.

## JAMES W. TEMPLE

### v.

## THE PEOPLE, use, etc.

1.  RECORDER OF DEEDS—FAILURE TO INDEX A MORTGAGE.—To warrant a recovery upon the official bond of a recorder of deeds, it must appear that he has failed to perform some official act enjoined upon him by law, and a resulting damage to the party suing. So, a recovery cannot be had for a failure of the recorder to enter a mortgage upon a sectional index, the law 1 t requiring him to keep such an index, and it appearing that such mortgage was properly indexed in a book kept for that purpose, of which book plaintiff had knowledge and failed to examine.

. 2.  NOTE—INDORSER—DISCHARGED BY LACHES OF INDORSEE.—The indorsee having neglected for three years after the maturity of the note to enforce its collection, the indorser is discharged from liability thereon unless it can be shown that the maker was insolvent or suit would have been unavailing. This being so, a voluntary payment to the indorsee by the indorser would not revive the claim as to the indorser so as to show an injury and loss to him, and thereby furnish a ground of action against the recorder for a loss arising from his negligence.

APPEAL from the Circuit Court of Knox county; the Hon. JOHN G. GLENN, Judge, presiding. Opinion filed June 17, 1880.

(378)

Temple v. The People.

Mr. P. H. Sanford and Mr. F. A. Willoughby, for appellant; that plaintiff being told of the existence of a prior mortgage, was thereby put upon inquiry, and is chargeable with knowledge of all the facts such inquiry would disclose, cited Cox v. Milner, 23 Ill. 476; Doyle v. Teas, 4 Scam. 202; Rupert v. Mark, 15 Ill. 440; Merrick v. Wallace, 19 Ill. 486; Erickson v. Rafferty, 79 Ill. 209; Lee v. Kilburn, 3 Gray, 598; Carpenter v. Leonard, 3 Allen, 32; Bartlet v. Decrect, 4 Gray, 113.

Mr. E. P. Williams, for appellee; as to the duty of the clerk to keep an index of deeds and mortgages, cited Rev. Stat. 1868, Chap. 87, § 10; 1869, Chap. 87, § 11.

Generally as to the right to recover: Cooley on Torts, 383; Merrick v. Wallace, 19 Ill. 486; Kiser v. Heuston, 38 Ill. 252; The Governor v. Dodd, 81 Ill. 162.

Pillsbury, P. J. The appellant was clerk of the Circuit Court and ex-officio recorder for Knox county, from 1868 to 1872, and this action is instituted upon his official bond by Winters to recover damages alleged to have been sustained by him for a failure upon the part of appellant to properly perform the duties of recorder. The particular breach of duty alleged in the declaration upon which the action is predicated consists in his failure to keep as recorder a correct *sectional* index, showing the conveyances of real estate in that county, whereby Winters was induced to take a mortgage upon lots 6 and 17, in blk. 13, in the city of Knoxville, believing the said real estate to be free from incumbrance, when in fact a prior mortgage for $1500 thereon had been recorded but not noted upon such sectional index. It is alleged, and such is the proof, that in November, 1870, the said Winters held the note of David E. Heagy, as principal, and Hugh and Washington Heagy as securities, upon which there was then due about $545, and that an arrangement was made by which Winters surrendered the note to the principal maker, and took a new note from said David E. and Elizabeth, his wife, secured by a mortgage upon the lots above described.

It is claimed by Winters that he had no knowledge of any prior incumbrance upon the property, and that he examined the said sectional index, and finding none noted thereon, he took the mortgage, surrendering the note with the personal security. It further appears, that at that time there was upon the records a prior mortgage given by said David E. and wife to one Miles Smith, for $1500, to secure a portion of the purchase money of said premises. The note thus received by Winters was, on the 26th of November, 1872, sold and indorsed by him to one William Davis, who retained the same until 1876, without attempting to collect.the same, when the makers failing to pay the interest, he brought suit, and at the February term, 1877, of the Knox Circuit Court, he obtained judgment, upon which execution was issued, and $200 made thereon, and then returned unsatisfied as to the balance. Thereupon, as is alleged in the declaration, Winters paid said Davis the amount of said execution not collected, as he had guaranteed the collection of the note, and was therefore obliged to protect his assignee. He then brought this suit to recover the amount thus paid to Davis, and recovered in the circuit court.

To entitle the plaintiff to recover upon the official bond of appellant, it must appear that the appellant has failed to perform some official act enjoined upon him by the law, and a resulting damage to the said Winters. We have not been referred to any statute in force at the time requiring the recorder to keep a sectional index, but the statute of 1847, requiring him to " keep a complete index of all deeds, mortgages and other instruments in writing, required by law to be recorded in his office, as a safe and sure reference to any such deed, mortgage or other instrument in writing so recorded by him, and open at all times to the citizens of such county for their inspection without fee," is relied upon by the appellee as determining his liability in that regard. It is admitted by counsel for the appellee that the appellant did at that time keep an entry book as required by statute, a grantee's index of mortgages and a sectional and town lot index, and the proof shows that this mortgage index was arranged under the names of the towns or cities wherein the mortgaged property was situated,

so that any one desiring to ascertain whether any town lot or block was mortgaged, could turn to the name of the town and without difficulty find what lots had been mortgaged, the date of the instrument, when recorded and the names of the parties thereto; and in this particular instance the proof further shows that in said index, under the name of the town of Knoxville, the mortgage from Heagy to Smith was properly noticed.

Winters, as shown by the evidence, was conversant with the records and the manner of keeping the indexes, and it is, to say the least, singular that he should confine himself to an examination of the sectional index to find a mortgage upon a town lot when he knew that there was a mortgage index where all the mortgages upon lots and blocks in Knoxville were indexed by themselves. It can only be accounted for upon the ground that he was grossly negligent regarding his own interests. He alleges in his declaration that he carefully examined the indexes, and that there did not appear thereon this mortgage, and that he relied upon such examination, etc.

It is thus seen that he relied upon his own examination of the books to inform himself of the state of the title to the lots in question, and we think that as he was looking to find if any incumbrances existed thereon and the recorder had a safe and sure reference thereto in the mortgage index to town lots, that ordinary care required him to examine such index, especially as he knew that such index was kept. If the recorder kept a complete index, which was a safe and sure reference to mortgages, and convenient for examination, and this was known to Winters, we are not prepared to say, that his loss is attributable to the failure of the clerk to note the mortgage in the sectional index so called by the parties.

We are also inclined to the opinion that Winters had notice of the existence of the Smith mortgage before he made the exchange of notes. It is true that he testifies that David Heagy, Washington Heagy and Elizabeth Heagy, all told him that the property was unincumbered at that time. All these witnesses deny this statement of Winters, and Washington Heagy swears that he told him at the time of the proposed change of securities " that Smith had a mortgage on the prop-

erty, and that Winters then said there was nothing on the record, but he would go and examine again, and in a short time came back and said he would take the mortgage—that he would have the first mortgage, or something to that amount; that this was after he had told him Smith had a mortgage on the property."

The testimony of these witnesses, each apparently entitled to as much credit as Winters, induces the belief that the recollection of Winters must be at fault as to what transpired at the time of the proposed change of securities. It is probable that Winters, not finding the Smith mortgage upon the sectional index, concluded he would have a prior lien upon the property, which at that time was a valuable security for the amount, and he would have the advantage of a well secured loan on long time, which was a consideration with him, as he says he only desired his interest.

Again, it appears that he was discharged from his liability as indorser of the note by the delay of Davis in the collection of the same from the Heagys, unless he can show that a suit by Davis for the collection thereof would have been unavailing; as it is not pretended that Davis took any steps to enforce payment for more than four years after it was assigned to him. To avoid the force of this position, appellees claim in their declaration that Winters guaranteed the collection of the note, and that the Heagys were insolvent. If the note could not have been collected from the Heagys by the exercise of due diligence on account of their insolvency, then the liability of Winters, as indorser, would continue; but the record does not show that from 1872 to 1876 the Heagys were insolvent. On the contrary, during all this time they paid the interest on the note, and the presumption is, in the absence of proof to the contrary, that the principal could be collected from them.

There is no proof that Winters' liability upon the note was other than that of indorser; the only evidence upon that point being his indorsement upon the note. It cannot be seriously contended that Winters had sustained any injury up to the time he paid Davis, and again became possessed of the note; and if he had already been discharged from all liability by the *laches* of Davis, we are at a loss to see how he could invest

himself with the right to recover substantial damages from appellant by voluntarily paying to Davis the amount due upon the execution, when he was under no legal obligation so to do. So far as this record discloses, his loss arose from such payment, for which he cannot, we think, hold the appellant responsible.

For these reasons we are of the opinion that a new trial should be had in this case. The judgment, therefore, will be reversed and the cause remanded.

Reversed and remanded.