# BALTIMORE CITY COURT.

Filed December 18, 1928.

STATE OF MARYLAND, FOR THE USE OF HOME MORTGAGE COMPANY, INC.,

VS.

STEPHEN C. LITTLE AND THE U. S. FIDELITY & GUARANTY CO., A BODY CORPORATE.

*Charles B. Bosley* and *Laurie H. Riggs* for plaintiff.

*Thomas H. Robinson*, Attorney-General, *Herbert Levy*, Assistant Attorney-General, and *J. Kemp Bartlett, Jr.*, for defendants.

FRANK, J.—

This action *ex contractu* is brought upon the official bond of the Clerk of the Superior Court of Baltimore City against the Clerk and the bonding company. A demurrer has been filed to the amended declaration, the legal sufficiency of which is thus challenged.

The declaration is too long to be set out here verbatim. The condition of the bond is alleged to be that, if the individual defendant, "while he should continue in the office of the Clerk, should faithfully perform all the duties then required of him by law, as such Clerk, then the said writing obligatory was to be void, otherwise to remain in full force and effect." A copy of the bond is filed with, as part of, the declaration and shows that its condition is therein averred with substantial accuracy, and is in accordance with the provisions of the law. Baltimore City Charter (1927), Sec. 357.

The declaration then alleges that one of the duties required of said defendant as such Clerk, was to index all deeds, conveyances and other papers required by law to be recorded among the Land Records in a system of land indexes known as the Block Index System, as will more fully appear by reference to the Acts of 1886, Ch. 289, and the minutes of the Supreme Bench of Baltimore City, dated July 1, 1886, a certified copy whereof is also attached to and made a part of the declaration. On account of the importance of this minute to the decision of the question herein involved, it will be hereinafter fully set out.

The declaration next avers that upon the annexation of Baltimore City in 1918, of additional territory, it became the duty of said Clerk to extend the Block Index System to said annexed district, whereupon said Clerk designated the whole thereof as one block, known as New Annex, and it became his duty to index in said block index in the names of grantors

and grantees all deeds, etc., described as affecting land in said New Annex; required by law to be recorded among the land records of his office.

This allegation of duty upon the part of the Clerk is a conclusion of law and, as such, is not admitted by the demurrer.

The declaration then narrates that a certain mortgage, dated April 24th, 1925, was duly executed and recorded among the Land Records of Baltimore City, affecting land lying in said New Annex, as fully appeared from the description thereof in said mortgage, and that the cost of recording and indexing the same was paid to the said Clerk. An examination of the New Annex, so maintained by said Clerk, did not disclose the said mortgage and, depending thereupon, the equitable plaintiff herein made a loan, relying upon a mortgage to it of the said property as sole security for the loan. This latter mortgage was duly recorded and indexed in the New Annex Index. Consequently, the equitable plaintiff claims that it had no notice of the existence of the former mortgage, had. to pay the balance due thereon, amounting the $213, to protect its own mortgage, and was injured to that extent. This action is brought to recover said sum of $213 from the defendants.

The minute of the Supreme Bench, which, by reference, is made a part of the declaration, will be set out in its chronological place in this discussion.

Article IV, Sec. 38 of the Constitution of Maryland provides: * * * The Clerk of the Superior Court of said (Baltimore) city shall receive and record all deeds, conveyances and other papers, which are or may be required by law to be recorded in said city * * *.

Article 17, Sec. 1 of the Annotated Code imposes upon the various Court Clerks the duty to "record all * * * deeds and writings which by law are required to be recorded in the office of which he is clerk." Section 59 requires the recordation of "all deeds, mortgages, * * * required to be recorded in a well bound book,· which shall contain an alphabetical index in the names of all parties to such deed, mortgage," etc. Sections 61 and 62 prescribe that the clerks "shall make a full and complete general alphabeti-

cal index (unless the same shall have already been done), in a book or books, well bound for that purpose, of all deeds, mortgages * * * of record in their respective offices, which index shall be both in the names of each and all the grantors, bargainors, donors or mortgagees, and each and all of the grantees, bargainors, etc., and shall refer to the book and page of the record of the several conveyances designating the same." That "they shall continue and keep up the alphabetical indexes * * * by noting at the time of receiving any deed, mortgage * * * the names of parties, and the character of the conveyance in such alphabetical index, in the manner prescribed in the preceding section."

The sections of the Code just stated were enacted by Chapter 88 of the Acts of 1833, and have remained in force unchanged until this time. It will thus appear that the effect of this legislation was to require the Clerk of the Superior Court of Baltimore City to index the names of grantors and grantees in two places: (a) in the record book in which the paper is recorded; (b) in a separate index of grantors and grantees. Until 1886, no provision of law existed for any other or different sort of index.

By Chapter 289 of the Acts of 1886, now codified as Sections 802 and 803, the following statute was enacted:

Sec. 802. "It shall be the duty of the Clerk of the Superior Court of Baltimore City to formulate and prepare a new plan or system for the indexing of all deeds, conveyances and other papers required by law to be recorded among the land records in his office, and submit the same to the Supreme Bench of Baltimore City for its approval."

Sec. 803. "Upon the adoption and approval of the plan or system of indexing authorized by the preceding section, the Clerk of the Superior Court of Baltimore City is authorized and directed to make and prepare for use in his said office, a new index of all land records and conveyances in his keeping, upon the plan or system so adopted and approved, in books suitable for the purpose; and all deeds and conveyances hereafter recorded among said land records, shall be indexed upon the plan or system aforesaid."

Thereafter, Mr. James Bond, then Clerk of the Superior Court, submitted to the Supreme Bench his report which, together with the order of the Supreme Bench approving it, is as follows:

"To the Honorable, the Judges of the Supreme Bench of Baltimore City:

"In pursuance of Chapter 289, of the Acts of the General Assembly of Maryland of 1886, Public Local Laws, entitled 'An Act to authorize the Clerk of the Superior Court of Baltimore City to prepare new indexes of the Land Records in his office, and to restore and transcribe old and mutilated records' the undersigned, Clerk of the Superior Court of Baltimore City respectively presents for your approval, the following amended plan of indexing, viz:

"1. To designate by number on a copy of Poppleton's Maps of the City of Baltimore, as nearly as may be, every entire block or square of ground thereon; a copy or copies thereof to be conspicuously exhibited in the office of the Clerk of the Superior Court.

"2. All deeds and instruments of writing, required by law to be recorded among the land records in the office of the said Clerk, and left for record on and after the first day of January, 1887, describing or affecting land, the location of which in any one or more of the block or squares designated as aforesaid clearly appears, shall be indexed, in the names of all the grantors and grantees therein, in an index to be known as the 'Index of Located Conveyances,' on a page or pages of index books corresponding in number with that of the block or square, blocks or squares, designated as aforesaid on said maps; which index shall show in figures the numbers and folios of the record books in which such deeds or instruments or writing are recorded.

"3. All deeds and instruments of writing, required by law to be recorded in the land records in the said office, and left for record in and after the first day of January, A. D. 1887, to location of which, with reference to the aforesaid block or squares, shall not clearly appear, shall be indexed, in the names of each and every one of the parties thereto, in a conveniently subdivided alphabetical index, to be known as the 'Index of Unlocated Conveyances'; which index shall show in figures the numbers and folios of the record books in which such deeds or instruments are recorded.

"4. All deeds and instruments of writing recorded in the Land Records of the aforesaid office from the 1st day of December, 1851, to the 31st day of December, 1886, both inclusive, shall be re-indexed in the same manner as hereinbefore provided for indexing conveyances to be recorded on and after the 1st day of January, 1887.

"5. In addition to the Block System of indexing as hereinbefore provided for, the Clerk of the Superior Court of Baltimore City shall make a full and complete conveniently sub-divided alphabetical index, to be known as the 'General Index' of all deeds and instruments of writing affecting lands or any interests therein, which shall be left for record in his office on and after the first day of January, 1887, which index shall be in the names of each and every party to every deed or instrument of writing, and shall refer to the book and page of the record of the several deeds or instruments of writing entered thereon.

Yours respectfully,

JAS. BOND.

"The foregoing plan of indexing recommended by the Clerk of the Superior Court of Baltimore City, is approved by the Supreme Bench of Baltimore City, this first day of July, A. D. 1886.

(Signed)
WILLIAM A. STEWART,
WILLIAM A. FISHER,
EDWD. DUFFY,
C. E. PHELPS."

I have been referred to no further action of the Supreme Bench in this behalf and, as none such is alleged in the declaration, I must act on the theory that there has been none. The only other legislation affecting the Block Index that I have been able to find consists of the Acts of 1898, Ch. 146, and 1902, Ch. 180, codified respectively as Sec. 364 A and Sec. 364 B of the City Charter of 1927. The Act of 1886, Ch. 289, was re-enacted by the Code of Local Laws of 1888 and its interpretation must be as of the date of the going into effect of that Code. Its embodiment in subsequent editions of the City Charter, that of 1927 being

the last, cannot change its force and effect. These later compilations are made only "evidence" of what is the law. (See e. g. Ch. 683, Acts 1927.)

Sections 364 A and 364 B extend the operation of the Block Index System to conveyances filed for record, respectively, between the years 1864 and 1886 and between the years 1851 and 1888 and obviously can have no effect upon conveyances affecting land lying in the New Annex of 1918.

From this outline it is apparent that, prior to January 1st, 1887, the Clerk of the Superior Court of Baltimore City was required by law to keep but two indexes of the parties to papers required by law to be recorded in Baltimore City, to wit, the index in each bound volume of the records and general index of grantors and grantees. The report of the then Clerk of the Superior Court to the Supreme Bench, of Baltimore City became, upon its approval by the Supreme Bench, from July 1, 1886, a legal requirement upon the clerk to prepare and maintain the additional form of index as therein provided. This, by virtue of the provisions of Chapter 289 of the Acts of 1886, thereupon became as binding upon the clerk as though it had been formally enacted by the General Assembly. By this the clerk was required:

"(1) To designate by number on a copy of Poppleton's maps of the City of Baltimore, as nearly as may be, every entire block or square of ground thereon."

(2) To provide pages of index books numbered so as to correspond with the number of the blocks or squares on said maps, on which shall appear the names of grantors and grantees in all deeds and instruments of writing left for record on and after the first day of January, 1887, "describing or affecting land, the location of which in any one or more of the blocks or squares designated as aforesaid clearly appears." All deeds and instruments of writing the location of which with reference to the aforesaid blocks or squares shall not clearly appear are to be indexed in an index of unlocated conveyances. This system was to be applied to all deeds and instruments of writing recorded in said land records from the first day of December, 1851, to the thirty-first day of December, 1886. In addition, the clerk was directed to make sub-divided alphabetical indexes to be known as the "General Index."

The declaration in this case makes no allegation with respect to "Poppleton's Plat." I do not know whether I am empowered to take judicial notice of what is meant by that plat. If so, I should note that this is an old plat of Baltimore City made in February, 1818, at a time when its boundaries did not include the land embraced in the two annexations of 1888 and 1918, respectively. This would sufficiently appear from the fact that it is made the basis of a report which was approved by the Supreme Bench on July 1st, 1886. If, however, I am not authorized to take judicial notice of what is means by "Poppleton's Plat," the allegations of the declaration must be taken most strongly against the pleader, and as this plat conclusively appears from the declaration in this case to have been made prior to 1886 and is described as a plat of Baltimore City, the inference against the pleader is incontroverible that it must refer to Baltimore City as its boundaries were at that time. I must, therefore, conclude that it did not embrace any of the territory included in either of the above mentioned annexations.

The clerk, by order of the Supreme Bench, is required to designate by number on a copy of Poppleton's maps of the City of Baltimore, as nearly as may be, every entire block or square of ground thereon. The index of located conveyances is to apply only to conveyances of the land which may be located in some one or more of such blocks or squares, and the block in which it is to be indexed and the index prepared is on the basis of the block number as designated by the clerk for such block or square on Poppleton's plat.

The requirement of paragraph three of Mr. Bond's report that all instruments, the location whereof, with reference to the established blocks, may not clearly appear should be indexed in the "Index of Unlocated Conveyances," obviously cannot apply to land situate in the old and new annexes. Clearly it applies only to such instruments as affect land which, if clearly described, would be located in one of the established blocks on Poppleton's

plat within the then limits of Baltimore City. In the absence of such clear description, such land could not be allocated to any such block, and would necessarily be treated and indexed as unlocated. The report is framed with reference to the then existing boundaries of Baltimore City as delineated upon Poppleton's Plat. The Supreme Bench could have had no idea of the annexation of 1888, and a fortiori, of the annexation of 1918. Land, fully described but lying in either the old or new annex, is not fairly to be designated as land "the location of which, with reference to the aforesaid blocks or squares shall not clearly appear." Its location is definitely and accurately known. It is only property whose location does not clearly appear that is covered by this section of the report.

The conclusion is inescapable, therefore, that, by the order of the Supreme Bench, of 1886, no duty was imposed upon the clerk to provide a block index for the New Annex, which did not come into the city until 1918.

The Annexation Act of 1918 (Ch. 82, Acts 1918) makes no reference to the indexing of Land Records. Section 2 subjects the annexed territory to "all the provisions of the Constitution of Maryland and of the Baltimore City Charter and other local laws applicable to Baltimore City." These, of course, include the provisions of Chapter 289, Acts 1886, now Sections 802 and 803 of the City Charter. Section 803 requires the clerk, upon the adoption and approval of the new plan or system, to put the same into effect "and all deeds and conveyances hereafter recorded among said land records, shall be indexed upon the plan or system aforesaid." As we have seen, the plan or system adopted, by its own limitations, could apply only within the boundaries of the then city as shown on Poppleton's Plat. This provision of Section 803 could not be held to require conveyances of land entirely without the scope of the plan to be indexed in accordance with the plan. This would involve a physical impossibility.

The declaration discloses, and I have found, no provision of law requiring the clerk to keep or maintain a block index for the New Annex of 1918. His action in providing an index therefor would appear to have been purely voluntary and not by virtue of any requirement of the law.

The bond sued on in this case is conditioned upon the faithful performance by the clerk of all the duties "required of him by law, as such clerk." Not being under any duty to maintain the New Annex block index, his failure to do so, characterized in the declaration in this case as negligence in maintaining said block index is not within the condition of his said bond.

"In the absence of statutory provision to the contrary, it is not the duty of a register to prepare and keep an index for the books of record used for recording instruments affecting title to real estate." 34 Cyc. 1020, B 4.

In the case of Temple vs. The People, 6 Ill. App. 378, it was held that a recovery upon his official bond cannot be had for the failure of the recorder to enter a mortgage upon a sectional index, the law not requiring him to keep such an index and, it appearing that such mortgage was properly indexed in a book kept for that purpose, of which the plaintiff had knowledge, but failed to examine. The law of Illinois required the keeping of a complete index of all deeds, mortgages, etc. The recorder voluntarily kept a sectional index, which seems roughly to correspond to our block index. The Court said that "to entitle the plaintiff to recover upon the official bond of appellant (the recorder), it must appear that the appellant has failed to perform some official act enjoined upon him by law.

It would appear, therefore, that the official bond of the clerk is not liable for a failure on his part to index in a block index a paper, affecting land in the New Annex of Baltimore City. Whether or not the party injured would have a right of action against the clerk individually, and not upon his official bond, under the circumstances disclosed by the declaration in this case, is not now before the Court, and it is not intended hereby to express any opinion with respect thereto.

Article 75 of the Annotated Code, Section 108, provides that the measure of damages in any action upon the bond of any clerk for a neglect of duty "shall be the sum or sums he has charged for services he has not performed, unless special damage has been

suffered by some person, and, if so, the jury shall, in addition, allow for such special damage." Under the allegations of the declaration herein the clerk is charged with having exacted a fee for indexing in the block index the mortgage in question. Under the provisions of Section 108, just cited, the person who paid this charge might be entitled to recover the same from the clerk. It is not alleged, and certainly is not the case, that the equitable plaintiff herein paid such charge and, therefore, it would in no event be entitled to recover the same.

For the above reasons, the demurrer to the declaration herein is sustained and, as it does not appear that the objections above set out can be cured by amendment, no leave to amend will be granted. However, the right is given to the plaintiff herein to file an appplication for leave to amend within thirty days from the date of the filing hereof.

In this view of the case, it becomes unnecessary to consider the other questions discussed at the hearing.